IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN LANGLEY, et al., | : |
| Plaintiffs, | : |
| v. | : CIVIL ACTION |
| | : NO. 15-4720 |
| TOLL BROS., INC., | : |
| Defendant. | : |

**MEMORANDUM**

**Tucker, C.J.**                                                                                                    **July 26, 2016**

Presently before the Court are Defendant's Motion for Summary Judgment (Doc. 18), Plaintiff's Response in Opposition (Doc. 20), and Defendant's Reply to Plaintiff's Response in Opposition (Doc. 21). Upon consideration of the parties' submissions and exhibits and for the reasons set forth below, this Court GRANTS Defendant's Motion.

**I.   FACTUAL BACKGROUND[1]**

---

[1] Defendant Toll Bros., Inc.'s ("Toll Bros.") Motion for Summary Judgment sets forth factual statements supported by citations to materials in the record pursuant to Federal Rule of Civil Procedure 56(c)(1)(A). Federal Rule of Civil Procedure 56(c)(1) also imposes a requirement upon the non-moving party to provide support for those facts that the non-moving party contends are genuinely disputed. Fed. R. Civ. P. 56(c)(1). Accordingly, when the nonmovant "assert[s] that a fact . . . is genuinely disputed [the nonmovant] must support the assertion by . . . citing to *particular parts of materials in the record* . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute" Fed. R. Civ. P. 56(c)(1) (emphasis added). The nonmovant may also demonstrate "that an adverse party cannot produce admissible evidence to support the fact." *Id.* If the nonmovant fails to address the movant's factual assertions, the court may:

   (1) give an opportunity to properly support or address the fact;
   (2) consider the fact undisputed for purposes of the motion;
   (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
   (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

1

In their Amended Complaint, Plaintiff Jonathan Langley ("Langley") and Plaintiff Sophia Adams ("Adams") (collectively, "Plaintiffs") allege that Defendant Toll Bros., Inc. ("Toll Bros.") violated the Fair Housing Act, 42 U.S.C. § 3604, *et seq.* ("FHA"). The material, undisputed facts follow.

Plaintiffs are two African American individuals who lived together in 2014. Def. Stmt. of Undisputed Facts ¶ 1, Doc. 18. In 2014, Plaintiff Langley's yearly income was less than $10,000.00, while Plaintiff Adams's yearly income was between $10,000.00 and $20,000.00. *Id.* ¶¶ 3–4. Neither Plaintiff has ever owned a house. *Id.* ¶ 5.

On or about July 25, 2014, Plaintiff Langley visited Defendant's open house at 1 Liseter Road, Newtown Square, Pennsylvania, to look at a model home of the Weatherman collection within Toll Bros.'s Liseter community (the "Weatherman Property"). *Id.* ¶ 6; Def. Mot. for Summ. J., Exh. 2 at 18:20–19:1, Doc. 18. At all relevant times, all the residences in the Liseter community were listed for a sale price exceeding $1,000,000.00. Def. Stmt. of Undisputed Facts ¶ 12. On or about October 31, 2014, Plaintiff Adams accompanied Plaintiff Langley for his second visit during another open house at the Weatherman Property. *Id.* ¶ 7.

To date, Plaintiffs have never requested or completed a purchase or rental application for a Toll Bros. home. *Id.* ¶¶ 9–10. Additionally, Plaintiffs have never made an offer to purchase or to rent a Toll Bros property. *Id.* ¶ 11. Defendant contends that Plaintiffs did not take any

---

In the present case, Plaintiffs Jonathan Langley's and Sophia Adams's (collectively, "Plaintiffs") Response in Opposition cites to materials that were not submitted in the record or, at times, fails to address Defendant's factual assertions. *See* Pls. Resp., Doc. 20.  More specifically, Plaintiffs rely on deposition testimony but failed to attach the relevant portions of the depositions to their Response. *Id.* Pursuant to Fed. R. Civ. P. 56(c)(3), "[t]he court need consider *only* the cited materials, but it may consider other materials in the record." (emphasis added). Accordingly, the Court deems Plaintiffs' Statement of Facts as undisputed for purposes of this motion. *See* Fed. R. Civ. P. 56(e)(2). The Court will rely on Plaintiffs' unsupported factual assertions to the extent that they do not conflict with materials contained in the record.

promotional materials, including pamphlets or brochures, during any of Defendant's open houses. *Id.* ¶ 8.

In addition to the above-mentioned undisputed facts, Plaintiffs allege that upon "arriv[ing] at the model home" on October 31, 2014, Defendant's employee Sheree Elgart ("Elgart") "told Langley that he could not take any photos with his phone." Pls. Stmt. of Material Facts ¶ 3, Doc. 20 (citing Langley Dep. 24:13). Once in the model home, "Langley took two . . . complimentary water bottles and two complimentary cans of ice tea from the kitchen." Pls. Stmt. of Material Facts ¶ 4 (citing Langley Dep. 32:6). Plaintiffs contend that "Elgart approached Plaintiffs" as they walked out of the model home to their vehicle. *Id.* ¶ 5 (citing Langley Dep. 33:11). Plaintiffs claim that "Elgart told Plaintiffs they could not re-enter the model home" and "accused Plaintiffs of stealing beverages." *Id.* ¶ 6 (citing Adams's Dep. 25:16). Elgart allegedly said that "'you people can't come here doing this'" and "'it's not a supermarket.'" *Id.* (quoting Adams's Dep. 24:18). Next, "Elgart retrieved her supervisor[,]" who "also told Plaintiffs this was not a 'supermarket.'" *Id.* ¶¶ 6–7 (quoting Adams Dep. 27:24). Plaintiffs contend that neither Elgart nor her supervisor "approach[ed] and questioned any Caucasian individuals at the open house regarding drinks or home buying qualifications." *Id.* ¶ 9. Further, "Caucasian people were never denied entry." *Id.* (citing Adams's Dep. 33:19–34:15).

Plaintiffs deny the contention that they did not go to the Toll Bros. open house with the intent to purchase a home. Pls. Resp. to Def. Stmt. of Undisputed Facts ¶ 15, Doc. 20 (citing Langley Dep. 58:1). Rather, Plaintiffs allege that Langley "visited the open house with the intent of making a purchase in the future." *Id.* Plaintiffs claim that Langley "would have co-signed for a home with his family." *Id.* ¶ 13. Further, Plaintiffs assert that Adams "took a brochure from the open house in October 2014." *Id.* ¶ 8 (citing Adams's Dep. 28:19). Plaintiffs also allege that, as a

3

result of the above-mentioned conduct, "Sophia Adams sought and received psychotherapy treatment from the Hospital of the University of Pennsylvania for distress." Pls. Stmt. of Material Facts ¶ 10.

## II.    PROCEDURAL BACKGROUND

On August 19, 2015, Plaintiffs filed their Complaint against Toll Brothers, Inc. and Sheree Elgart. Doc. 1. On October 14, 2015, this Court approved the parties' stipulation to dismiss Sheree Elgart as a party to the action, without prejudice, and to amend the Complaint to substitute defendant Toll Brothers, Inc. with Toll Bros., Inc. (the "Amended Complaint"). Doc. 5. On May 2, 2016, Defendant filed the instant Motion for Summary Judgment. Doc. 18.

## III.    STANDARD OF REVIEW

A motion for summary judgment will be granted "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Cunningham v. M & T Bank Corp.*, 814 F.3d 156, 160 (3d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' . . . as to whom all reasonable inferences must be drawn." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is 'material' . . . if its existence or nonexistence . . . 'impact[s] the outcome of the suit under the applicable substantive law.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015).

The movant must first "identify[] specific portions of the record that establish[es] the absence of a genuine issue of material fact." *Id.* If the movant satisfies this initial burden, "the burden [then] shifts to the nonmoving party to go beyond the pleadings and 'come forward with specific facts showing that there is *a genuine issue for trial*.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted)).

"[W]here a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). "[M]ere allegations are insufficient, and '[o]nly evidence sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage.'" *Id.* (quoting *Lauren W. v. DeFlaminis*, 480 F.3d 259, 266 (3d Cir. 2007)).

## IV.   DISCUSSION

"It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. To enforce this policy, Congress enacted Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act" or "FHA"), "a detailed housing law, applicable to a broad range of discriminatory practices and enforceable by a complete arsenal of federal authority." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 417 (1968). Congress intended for the FHA to have a "'broad remedial intent.'" *Alexander v. Riga*, 208 F.3d 419, 425 (3d Cir. 2000) (quoting *Havens Realty v. Coleman*, 455 U.S. 363, 380 (1982)). Additionally, Congress intended for the FHA "to provide fair housing to minorities who had previously been victims of invidious racial discrimination." *Mitchell v. Cellone*, 389 F.3d 86, 87 (3d Cir. 2004). The FHA, like Title VII of the Civil Rights Act of 1964, "was enacted to eradicate discriminatory practices within a sector of our Nation's economy." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2521 (2015). The FHA prohibits discriminatory housing practices on the basis of "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604.

*A. Standing*

Plaintiffs claim that "Defendant[] discriminated against Plaintiffs because of their race (African American)." Am. Compl. ¶ 17; *see also* Pls. Resp. at 7, Doc. 20. Defendant alleges that Plaintiffs do not have standing to sue Defendant because Plaintiffs failed to demonstrate that they are "aggrieved persons" under the FHA. Def. Mot. for Summ. J. at 8. As a preliminary matter, the Court will determine whether Plaintiffs have standing to sue under the FHA.

42 U.S.C. § 3613(a)(1)(A) provides that "[a]n aggrieved person may commence a civil action . . . to obtain appropriate relief" regarding "the occurrence or the termination of an alleged discriminatory practice." The FHA defines an "aggrieved person" as "any person who . . . claims to have been injured by a discriminatory housing practice; or believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). The FHA defines a "discriminatory housing practice" as "an act that is unlawful under [42 U.S.C. §§] 3604, 3605, 3606, or 3617." 42 U.S.C. § 3602(f). Section 3604 makes it unlawful to, *inter alia*, "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race." 42 U.S.C. § 3604(a). "'[T]he sole requirement for standing to sue under [the FHA] is the Art. III injury in fact: that the plaintiff *allege* that as a result of the defendant's actions he has suffered a distinct and palpable injury.'" *Growth Horizons, Inc. v. Del. Cty.*, 983 F.2d 1277, 1281–82 (3d Cir. 1993) (emphasis added) (quoting *Havens Realty*, 445 U.S. at 372 (internal quotation marks omitted)).

In the instant case, Plaintiffs have standing to bring this case under the FHA because Plaintiffs "*claim*[] to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i) (emphasis added). Plaintiffs allege that on October 31, 2014, "Elgart accused Plaintiffs

6

of stealing beverages" and "told Plaintiffs they could not re-enter the model home." Pls. Stmt. of Material Facts ¶ 6 (citing Adams's Dep. 24:18). Elgart purportedly stated that "'you people can't come here doing this'" and "'it's not a supermarket.'" *Id.* (quoting Adams's Dep. 27:24). Elgart's supervisor allegedly "also told Plaintiffs this was not a 'supermarket.'" *Id.* ¶ 7 (quoting Adams's Dep. 27:24). Plaintiffs allege that "[a]t no time did Elgart or her supervisor approach and question[] any Caucasian individuals at the open house . . . . Caucasian people were never denied entry." *Id.* ¶ 9 (citing Adams's Dep. 33:19–34:15). Further, "Plaintiff[] Langley . . . was in 'shock' . . . [and] 'offended.'" Pls. Stmt. of Material Facts ¶ 8 (citing Langley Dep. 39:8). Plaintiffs claim that they "suffered severe emotional distress and embarrassment. Specifically, Sophia Adams . . . received psychotherapy treatment from the Hospital of the University of Pennsylvania for distress arising from this matter." *Id.* ¶ 10.

Moreover, Plaintiffs allege that "Defendant[] blatantly targeted Plaintiffs because they are African American." Pls. Resp. at 7. That is, "Defendant[] discriminated against Plaintiffs because of their race (African American)." Am. Compl. ¶ 17. Plaintiffs contend that, by being asked to leave the open house, "Defendant[] effectively barred [their] application" and "[t]here was no opportunity to negotiate." Pls. Resp. at 9. Further, "Plaintiffs were targeted for no other reason than the fact that they are African American." *Id.* at 10. Plaintiffs argue that Defendant's alleged "refus[al] to negotiate" with Plaintiffs "for the sale or rental of[] . . . a dwelling . . . because of race" constitutes a violation of 42 U.S.C. § 3604(a). *Id.* at 9–10. Thus, Defendant's alleged discriminatory housing practice caused Plaintiffs' "'distinct and palpable injur[ies].'" *Growth Horizons*, 983 F.2d at 1282 (quoting *Havens Realty*, 445 U.S. at 372 (internal quotation marks omitted)). Accordingly, Plaintiffs are "aggrieved parties" and properly commenced this civil action.

*B. Prima Facie Case*

Defendant Toll Bros. argues that this Court should grant the Motion for Summary Judgment because Plaintiffs failed to state a prima facie case of discrimination under the FHA. Def. Mot. for Summ. J. at 7. Defendant alleges that "Plaintiffs cannot show that they applied or attempted to apply for housing from [Defendant], and as such, [Defendant] did not and could not have rejected [Plaintiffs'] attempt to procure housing for any reason, let alone race." *Id.* at 8. In contrast, Plaintiffs contend that "Defendant[] barred Plaintiffs from the open house after baselessly accusing Plaintiffs of stealing." Pls. Resp. at 8. "Defendant[] singled out Plaintiffs from potential Caucasian buyers." *Id.* Plaintiffs claim that "[i]t would have been strange for Plaintiffs to submit an application to Defendant[] after being explicitly told not to return." *Id.* at 9. Thus, "Defendants effectively barred [their] application." *Id.*

"The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly*, 658 F.3d 375, 381 (3d Cir. 2011). A plaintiff alleging a violation of the FHA on the basis of race "may bring . . . (1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims." *Cmty. Servs. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005). In order to evaluate these claims pursuant to the FHA, "courts have typically adopted the analytical framework of their analogues in employment law, including their coordinate burden-shifting analyses once plaintiff has made a prima facie showing of discrimination under a specific claim." *Id.*

In *Chauhan v. M. Alfieri Co.,* the Third Circuit held that Title VII's burden shifting provisions under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), govern "summary judgment motions in section 1981 cases" in the leasing context. 897 F.2d 123, 126–27 (3d Cir.

1990). The court found that "[t]he *McDonnell Douglas* formula is grounded in the presumption that . . . intentional discrimination is often difficult to prove." *Chauhan*, 897 F.2d at 127. The court explained that "[r]equiring direct evidence of pretext denies the plaintiff the benefit of the presumptions that are necessary if the plaintiff is to 'have his day in Court, despite the unavailability of direct evidence.'" *Id.* (quoting *Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985)).

When reviewing summary judgment decisions after *Chauhan*, the Third Circuit consistently affirms the district court's reliance on the *McDonnell Douglas* paradigm to evaluate FHA claims. *See, e.g.*, *Griffin v. Miller*, No. 14–4711, 2016 WL 1743461, at *1 (3d Cir. May 3, 2016) (finding that the "District Court properly concluded" on summary judgment that plaintiff's claims under FHA and Title VI of the Civil Rights Act of 1964 "are governed by . . . *McDonnell Douglas*"); *Koorn v. Lacey Twp.*, 78 Fed. App'x 199, 207 (3d Cir. 2003) (applying *McDonnell Douglas* to 42 U.S.C. §§ 1981, 1982, and FHA claims). In the absence of direct evidence, sister courts in this Circuit have also analyzed FHA claims under the *McDonnell Douglas* framework. *See, e.g.*, *Griffins v. Berks Cty. Hous. Auth.*, No. 10–cv–05740, 2014 WL 6861864, at *8–10 (E.D. Pa. Dec. 5, 2014) (applying *McDonnell Douglas* to Title VI and FHA claims); *Madison v. Phila. Hous. Auth.*, Civil Action No. 09–3400, 2010 WL 2572952, at *3–4 (E.D. Pa. June 23, 2010) (applying *McDonnell Douglas* to FHA claims); *Pondexter v. Allegheny Cty. Hous. Auth.*, C.A. No. 2:04CV536, 2007 WL 3120289, at *13–14 (W.D. Pa. Oct. 23, 2007) (applying *McDonnell Douglas* to Title VI and FHA claims), *aff'd*, 329 Fed. App'x 347 (3d Cir. Apr. 29, 2009); *United States v. Branella*, 972 F. Supp. 294, 298–99 (D.N.J. 1997) (applying *McDonnell Douglas* to FHA claims).

Accordingly, the Court will apply the *McDonnell Douglas* framework, in accordance with precedent, because Plaintiffs did not offer direct evidence of Defendant's intentional discrimination.[2] Under the *McDonnell Douglas* paradigm, Plaintiffs must establish a prima facie case by demonstrating that: "(1) plaintiffs are in a protected class, (2) they applied for and were qualified to rent or purchase housing, (3) they were rejected, and (4) the housing opportunity remained available." *Koorn*, 78 Fed. App'x at 207 (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir. 1979)); *see also Chauhan*, 897 F.2d at 127 (finding that in the leasing context, a plaintiff must establish that "(1) he is in a protected class; (2) he attempted to lease [or purchase] the space; (3) he was a qualified applicant; and (4) the space remain unfilled after he applied."). If Plaintiffs demonstrate their prima facie case, the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for the challenged action. *Chauhan*, 897 F.2d at 127. Assuming Defendants produce such a reason, Plaintiffs must then "produce or point to some evidence, in addition to the basic facts necessary to establish the prima facie case, indicating that the defendant's reason is pretextual." *Id.* at 128.

In this case, it is undisputed that Plaintiffs are members of a protected class as African American individuals. Plaintiffs fail, however, to establish a prima facie case of discrimination because they failed to prove the second prong of *Koorn*—that they applied for and were qualified to rent or purchase housing. Plaintiffs concede that they did not request or complete a Toll Bros.

---

[2] In order to be considered direct evidence, evidence "must be 'so revealing of [discriminatory] animus that it is unnecessary to rely on the [*McDonnell Douglas*] burden-shifting framework, under which the burden of proof remains with the plaintiff.'" *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (quoting *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 512 (3d Cir. 1997)). Here, Plaintiffs allege that "Elgart accused Plaintiffs of stealing beverages" and "told Plaintiffs they could not re-enter the model home." Pls. Stmt. of Material Facts ¶ 6 (citing Adams's Dep. 24:18). Elgart then stated that "'you people can't come here doing this'" and "'it's not a supermarket.'" *Id.* (quoting Adams's Dep. 27:24). Elgart's supervisor "also told Plaintiffs this was not a 'supermarket.'" *Id.* ¶ 7 (quoting Adams's Dep. 27:24). These statements, however, are not "'so revealing of [discriminatory animus]'" such that the Court need not rely upon the *McDonnell Douglas* framework. *Anderson*, 621 F.3d at 269 (quoting *Walden*, 126 F.3d at 512).

purchase or rental application on July 25, 2014 or October 31, 2014. Def. Stmt. of Undisputed Facts ¶¶ 9–10; Pls. Resp. to Def. Stmt. of Undisputed Facts ¶¶ 9–10. Indeed, Plaintiffs *never* completed or requested an application from Toll Bros. Def. Stmt. of Undisputed Facts ¶¶ 9–10; Pls. Resp. to Def. Stmt. of Undisputed Facts ¶¶ 9–10. Likewise, Plaintiffs never made an offer to purchase or rent a Toll Bros. property. Def. Stmt. of Undisputed Facts ¶ 11; Pls. Resp. to Def. Stmt. of Undisputed Facts ¶ 11. Further, Plaintiffs could not satisfy the third prong of the *Koorn* test—that they were rejected from procuring housing—because they never offered or applied to purchase or rent a Toll Bros. home.

The Court's finding that Plaintiffs failed to demonstrate that they were qualified to rent or to purchase a home is further bolstered by the fact that Plaintiffs did not intend to rent or to purchase a home from Defendant when they attended Defendant's open houses. Plaintiff Langley concedes that he went to the June 25, 2014 open house because "[he] [saw the homes] all on YouTube and [he] just wanted to see what [the Weatherman Property] looked like at that time." Def. Mot. for Summ. J., Exh. 2 at 23:4–11. Similarly, Plaintiffs "went [to the October 31, 2014 open house] to inquire, because . . . one day [Plaintiffs] wanted to own one of those houses." *Id.* at 24:17–24.

Additionally, Plaintiffs toured the Weatherman Property for approximately "an hour" during the October 31, 2014 open house. Def. Reply, Exh. A at 27:7–11; *Id.* Exh. B at 18:3–5. During that hour, Plaintiffs never asked a Toll Bros. employee for materials to better learn about applying to purchase a Liseter property. Def. Mot. for Summ. J., Exh. 2 at 46:17–22.  Further, when asked for his personal view of whether he was "qualified to be able to purchase one of the Liseter properties[,]" Langley testified that he "didn't go [to the Toll Bros. open houses] with the intent [to purchase a Liseter property]." Def. Reply, Exh. A at 56:10–57:15. Instead, Plaintiff

11

Langley was "just going to come and *look.*" *Id.* (emphasis added). Plaintiffs did not complete an application or attempt to negotiate for the purchase or sale of a Liseter property because Plaintiffs never intended to rent or purchase a property. Thus, Defendants did not "effectively bar[]" Plaintiffs from an application for a home that they did not intend to pursue at that time. Pls. Resp. at 9.

Nonetheless, Plaintiffs contend that Defendant violated the FHA by "effectively barr[ing] an application[,]" thereby denying Plaintiffs an "opportunity to negotiate." *Id.* Plaintiffs' entire claim centers upon an alleged encounter with Defendant's employee Elgart on October 31, 2014. Plaintiffs allege that "Defendant[] barred Plaintiffs from the open house after baselessly accusing Plaintiffs of stealing[,] . . . singl[ing] out Plaintiffs from potential Caucasian buyers." Pls. Resp. at 8. More specifically, "Elgart accused Plaintiffs of stealing beverages" and "told Plaintiffs they could not re-enter the model home." Pls. Stmt. of Material Facts ¶ 6 (citing Adams's Dep. 24:18). Elgart then stated that "'you people can't come here doing this'" and "'it's not a supermarket.'" *Id.* (quoting Adams's Dep. 27:24). Elgart's supervisor "also told Plaintiffs this was not a 'supermarket.'" *Id.* ¶ 7 (quoting Adams's Dep. 27:24). Plaintiffs contend that Defendant's "message was loud and clear: Don't come back." Pls. Resp. at 9 (emphasis omitted).

These statements, however, are neither direct evidence of racial discrimination nor evidence of a discriminatory housing practice. Furthermore, Defendant's actions were not completely "baseless." Plaintiff Langley testified that he "took the [two] iced teas and [two] water[s] . . . within the 45 minute[s] to an hour [of the open house], toward the end." Def. Reply, Exh. A at 32:3–23. "After [he] got the four drinks, . . . [Plaintiffs] exited [the Weatherman Property] and . . . were about to go to the car . . . [when Langley] asked [Adams] if she wanted to go see the deck." *Id.* at 33:11–14. Langley "had the drinks in [his] pocket," and went "to walk

12

the drinks to the car" while Adams "wait[ed] at the house for [him]." *Id.* at 33:14–19; *Id.* Exh. B at 22:16–21. Then, "Elgart walk[ed] from the parking lot as [Langley] was going and . . . she kind of had like a look on her face, she didn't really understand, because [he] had [taken] [the drinks] out of [his] pocket." *Id.* Exh. A at 33:20–24.

Thus, Plaintiffs' recitation of the events establishes that Defendant's alleged statements were in reaction to Plaintiffs' taking of four complimentary beverages. Plaintiffs fail, however, to demonstrate that these statements were made because of racial animus or that Defendant employed a discriminatory housing practice. Accordingly, Plaintiffs fail to satisfy the prima facie case.

In addition to failing to apply to rent or purchase a home, Defendant contends that Plaintiffs cannot satisfy the second prong under *Koorn* because Plaintiffs "admit that they could not afford" one of the Toll properties similar to the open houses that Plaintiffs visited, "all of which were priced in excess of $1 million." Def. Mot. for Summ. J. at 8. Plaintiffs claim that "Defendant[] had no information regarding Plaintiffs' financial status before Plaintiffs were told to leave." Pls. Resp. at 9. The Court need not hypothesize on whether Plaintiffs *could* have qualified to rent or purchase the property. More specifically, Plaintiffs cannot establish a prima facie case, regardless of their financial qualifications for procuring a Toll Bros. property, because Plaintiffs never applied, attempted to apply, offered or even intended to rent or purchase a home. Accordingly, Plaintiffs fail to satisfy the prima facie case and fail to demonstrate that Defendant refused to negotiate for the sale or rental of a Toll Bros. home because of Plaintiffs' race. Thus, Defendant did not violate 42 U.S.C. § 3604(a).

Plaintiffs' Amended Complaint alleged that Defendant violated the FHA, 42 U.S.C. § 3604, *et seq.*, but failed to specify the manner in which Defendant violated the FHA. In their

response to the Motion for Summary Judgment, however, Plaintiffs allege that Defendant's actions prevented Plaintiffs' negotiation for the rental or sale of a Toll Bros. property. Pls. Resp. at 8–10.  Even if the Court assumes that another subsection of 42 U.S.C. § 3604 were to apply, Plaintiffs still cannot demonstrate that Defendant employed a discriminatory housing practice under the FHA.

Defendant did not violate § 3604(b) because it did not "discriminate against [Plaintiffs] in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of race." 42 U.S.C. § 3604(b). Plaintiffs did not proffer any evidence that demonstrates that they were denied a "term," "condition," or "privilege," of the sale of a dwelling *because of their race*. Plaintiff Langley concedes that he did not inquire about purchasing or renting a Toll Bros. home.

Additionally, Defendant did not violate § 3604(c) because it did not "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicate[d] any preference, limitation, or discrimination based on race." 42 U.S.C. § 3604(c). Plaintiffs did not produce any evidence that Defendant made any notice, statement, or advertisement indicating any preference, limitation, or discrimination based on race. Rather, the record indicates that Defendant made two "statements" or "advertisements." The first statement—Elgart's alleged accusations of Plaintiffs stealing— does not indicate a preference, limitation, or discrimination based on race *with respect to the sale or rental of a dwelling*. The second—an advertisement for the Weatherman Property—indicates that the sale prices exceeded $1,000,000.00. Accordingly, Defendant did not violate § 3604(c).

Similarly, Defendant did not violate § 3604(d). Section 3604(d) prohibits "represent[ations] to any person because of race . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." Defendant did not

represent that the Weatherman Property was unavailable. Langley concedes that no employee told him that the Toll Bros. houses were unavailable for sale or rent. Def. Mot. for Summ. J., Exh. 2 at 23:12–16, 47:7–23.

Lastly, Defendant did not "induce or attempt to induce [Plaintiffs] to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race" in violation of § 3604(e). 42 U.S.C. § 3617. Plaintiffs did not submit, and the record does not reflect, any evidence of Defendant making any representations regarding Plaintiffs' entry or prospective entry into the Liseter community. In sum, Defendant did not violate the FHA.

## V. CONCLUSION

For the reasons explained herein, this Court concludes that there is no genuine dispute as to a material fact that Defendant did not violate the Fair Housing Act. Accordingly, this Court grants Defendant's motion for summary judgment. An appropriate order follows.